# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVID LEE TOMLINSON, JR., | |
| Petitioner, | No. C06-152-MWB |
| vs. | **REPORT AND RECOMMENDATION ON MOTION TO DISMISS** |
| JERRY BURT, | |
| Respondent. | |

This matter is before the court on the respondent Jerry Burt's motion, Doc. No. 8, to dismiss the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by the petitioner David Lee Tomlinson, Jr. Doc. No. 3. Burt argues the three grounds for relief cited by Tomlinson in his petition are unexhausted and procedurally defaulted. In addition, Burt argues Tomlinson, in his "actual innocence" claim, *see* Doc. No. 3, ¶ 12A, fails to state a federal question or claim that is cognizable in this action. *See* Doc. No. 8.

On November 17, 2006, the court granted Tomlinson's request for appointment of counsel, and an attorney was appointed to represent him. Doc. Nos. 2 & 4. Burt filed his motion to dismiss on January 17, 2007, Doc. No. 8, and Tomlinson's attorney subsequently requested three extensions of time to respond to the motion, each of which was granted. *See* Doc. No. 14; Doc. No. 15, extending the deadline to May 6, 2007; Doc. No. 17; Doc. No. 18, extending the deadline to June 19, 2007; Doc. No. 19; Doc. No. 20, extending the deadline to August 19, 2007. Despite these repeated extensions of the deadline, no response to Burt's motion to dismiss has been filed by Tomlinson's attorney.

The court could grant Burt's motion to dismiss on procedural grounds due to Tomlinson's failure to respond to the motion to dismiss. *See* Local Rule 7.1(f); *see also* Fed. R. Civ. P. 41(b); *Edgington v. Missouri Dept. of Corrections*, 52 F.3d 777, 779-80

(8th Cir. 1995); L.R. 41.1(b)(4) (providing for dismissal of action for failure to respond to an order of the court). However, the court notes that Tomlinson filed a *pro se* supplement to his petition on June 15, 2007, Doc. No. 21, in which, among other things, Tomlinson addresses the arguments raised in Burt's motion to. Because an attorney had been appointed to represent Tomlinson, the court struck Tomlinson's *pro se* pleading and directed him to communicate with his attorney regarding legal arguments he wishes raised in this action, leaving to his attorney the decision whether or not to incorporate Tomlinson's arguments in any resistance or amended petition. *See* Doc. No. 22.

Because Tomlinson has responded, albeit *pro se*, to Burt's arguments, the court will consider Tomlinson's arguments set forth in his *pro se* brief, and will not recommend that Burt's motion be granted on procedural grounds.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The factual background of the case was summarized by the Iowa Court of Appeals in its opinion on Tomlinson's direct appeal. *See State v. Tomlinson*, 2001 WL 58436, 2001 Iowa App. LEXIS 68 (Iowa Ct. App. 2001) (*Tomlinson I*). This court adopts the factual findings of the Iowa Court of Appeals for purposes of this proceeding. *See* 28 U.S.C. § 2254(e)(1) (in a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," absent rebuttal by the petitioner, by clear and convincing evidence). The Iowa Court of Appeals summarized the case as follows:

> On the morning of May 22, 1998[,] Scott Rosenberger went to work at Dave's Auto Repair in Tama, Iowa. The business was owned and operated by David Tomlinson, Sr., the father of the defendant David Lee Tomlinson, Jr. (hereafter "Tomlinson"). Tomlinson lived with his father and sister, Angela Miell, in his father's house, across a driveway from the business. The previous evening Tomlinson had borrowed the key to the repair shop from Rosenberger and returned it promptly. The morning of May 22 when Rosenberger arrived at work he

2

noticed the door to the shop was unlocked and a black truck which had been there for repairs was gone. As time passed on May 22 and David Tomlinson, Sr. did not show up for work at the shop, Rosenberger assumed he was out running errands. Around noon Rosenberger made several phone calls around town attempting to locate David, Sr. but could not find him. The phone at David, Sr.'s house was repeatedly busy.

Some time later Rosenberger received several emotional phone calls from Tomlinson's mother Jackie, David, Sr.'s former wife, who eventually told him Tomlinson had told her not to go to the house because "it wasn't pretty." She asked Rosenberger to go check it out because she believed Tomlinson may have done something to the others. Rosenberger informed Jackie she needed to call the police, however she stated she could not call the police on her own son. Rosenberger called the police to check whether anything had happened at David, Sr.'s house.

Police arrived at the house and discovered both Tomlinson's sister, Angela, and his father had been shot to death in their bedrooms. Forensic experts concluded they had both been shot with deer slugs from the father's missing twelve-gauge shotgun. An empty shotgun shell box, which had contained shells identical to the ones that killed the victims, was found in the kitchen trash can. A box of shells similar to those found at the crime scene was later found in the glove compartment of Tomlinson's truck in a bag with a receipt indicating two boxes of shells had been purchased the day before. Fingerprint analysis revealed Tomlinson's prints on the battery of a smoke alarm which had been removed from the smoke alarm and left at the scene, the empty shell box, and the bag holding the box of shells in Tomlinson's truck.

The day of the killings Tomlinson drove to Kansas City in the black truck taken from the repair shop. After calling his mother he checked himself into the Western Missouri Mental Heath Center on her advice. Following examination by hospital staff, Tomlinson was admitted. He made several statements to staff there indicating he had gotten into trouble in Iowa, and stated he had to run.

3

Following arrest, the State charged Tomlinson with two counts of first-degree murder, for the deaths of Angela Miell and David Tomlinson, Sr., in violation of Iowa Code sections 707.1 and 707.2, and flight from the state to avoid prosecution, in violation of Iowa Code section 719.4(4). Tomlinson filed a notice of his intent to rely upon the legal defenses of insanity and diminished responsibility. Both parties filed applications for psychiatric evaluations of Tomlinson by their respective experts. Tomlinson's request was that he be evaluated as to competency, insanity, and diminished responsibility. The court sustained the applications and scheduled a competency hearing pursuant to Iowa Code section 812.3. Tomlinson was evaluated at the Iowa Medical and Classification Center at Oakdale. A report was submitted to the district court based on this evaluation. The evaluators found that Tomlinson suffered from no mental condition which would interfere with his ability to appreciate the charges against him, understand the proceedings, or assist in his defense. Based on this report, and prior to the competency hearing, Tomlinson subsequently withdrew any challenge to his competency.

On the third day of trial Tomlinson moved for a continuance of the trial proceedings until evidence could be presented concerning his competency to proceed. He asserted that medical evidence he had just acquired questioned his competency to proceed with trial. The court initially declined to hold a hearing, stating a finding that it did not reasonably appear that Tomlinson was not competent to proceed with trial. It did, however, by way of offer of proof hear the evidence Tomlinson wished to present on the question of his competency. As part of the offer of proof hearing the court also received, without objection, a written report concerning the competency evaluation that had been done at the Iowa Medical and Classification Center at Oakdale. Following the offer of proof hearing the court continued with trial. Tomlinson later moved for a mistrial after the State's witness, Dr. Michael Taylor, gave an answer that Tomlinson perceived as violating his Fifth Amendment right to remain silent. The motion for mistrial was denied.

4

> The jury found Tomlinson guilty of first-degree murder for the death of Angela Miell, second-degree murder for the death of David Tomlinson, Sr., and flight from the state to avoid prosecution. Tomlinson was sentenced to life in prison for first-degree murder, a term of no more than fifty years for second-degree murder, and a term of no more than five years on the flight charge, the sentences to run consecutively

*Tomlinson I*, 2001 WL 58436 at \*\*1-3.

Tomlinson filed a direct appeal in which he raised the following four issues for review:

1. Did the district court err in denying defendant's motion for mistrial made after the state's witness, Dr. Michael Taylor[,] improperly commented upon the defendant's guilty [sic] or innocence in defendant's exercise of his fifth amendment rights?

2. Did the district court err in not suspending the trial of the defendant to hold a competency hearing once medical information was presented to the court that defendant was not able to understand the court proceedings or to effectively assist in his defense?

3. Did the district court err in finding sufficient evidence to permit the charge of flight from the state to avoid prosecution to be presented to the jury?

4. Was the defendant denied the effective assistance of counsel by counsel's failure to allege and argue in a motion for new trial that the verdicts were contrary to the weight of the evidence pursuant to Iowa Rule of Criminal Procedure 23.2(b)(6)?

Doc. No. 10, ¶ 2(a), Appellant's Brief, *State v. Tomlinson*, No. 88-1818 (Iowa Sup. Ct. May 23, 2000). Tomlinson's appeal was denied on all grounds. *See Tomlinson I, supra.*

Tomlinson filed an application for further review in which he raised two issues, both of which related the trial court's failure to strike the testimony of Dr. Taylor. *See*

¶ 1, above. The application for further review was denied by the Iowa Supreme Court. *See* Doc. No. 10(2)(f).

Tomlinson filed a *pro se* application for post-conviction relief ("PCR"), in which he checked preprinted boxes indicating he was asserting the following grounds for relief:

> A. The conviction or sentence was in violation of the Constitution of the United States, The Constitution of the State of Iowa, or the laws of this State.
>
> . . .
>
> D. There exists evidence of material facts, not previously presented and heard, that require vacation of the conviction or sentence in the interest of justice.
>
> . . .
>
> F. The conviction or sentence is otherwise subject to collateral attack upon grounds) of alleged error [not] formerly available under any common law, statutory [sic], other writ, motion proceeding or remedy.

Doc. No. 10, ¶ 3(a), PCR Application dated June 13, 2001. As explanation for his assertions of error, Tomlinson stated as follows:

> Ineffective assistance of counsel; extreme prejudice before and during trial making trial unconstitutional.
>
> . . .
>
> The trial was vidio [sic] recorded and was transcribed and my trial lawyer has some first hand knowledge [of] all other evidence [that] still needs [to be] investigated.

*Id.*

After counsel was appointed to represent Tomlinson in the PCR proceedings, the parties filed a joint pretrial statement dated July 1, 2004, in which Tomlinson, through his counsel, alleged the following:

> (1) His trial counsel did not adequately prepare for trial, did not adequately defend him, and failed to adequately prepare his psychiatric defense and were ineffective at trial; (2) The trial court should not have permitted the withdrawal of his first

6

> counsel of record, that he lacked the understanding and capacity at that time as shown by the transcript to have made a proper decision regarding his representation; (3) His trial counsel failed to have him psychiatrically evaluated prior to trial; (4) His trial counsel failed to adequately pursue the offers to negotiate a settlement of the case "which Applicant believes was being urged by the Court to counsel;" (5) His trial counsel did not adequately and timely prepare for the Motion to Change Venue and (6) "Matters developed in depositions and testimony."

Doc. No. 10, ¶ 4(d), PCR Appellate Appendix, p. 60 (PCR Court's ruling dated July 7, 2005).

In a subsequent pretrial statement, Tomlinson recast his grounds for relief as follows:

> (1) Applicant alleges his trial counsel did not adequately prepare for trial; did not adequately defend him; and failed to adequately prepare his psychiatric defense and were ineffective at trial; (2) Applicant alleges the trial court should not have permitted the withdrawal of his first counsel of record, that he lacked the understanding and capacity at that time to have made a proper decision regarding his representation and that the Court and his counsel failed to ask him how the motion came about, who prepared it; (3) Trial counsel failed to have hi[m] psychiatrically evaluated before trial; (4) Trial counsel failed to seek etiology by simply asking Applicant regarding the history of his "pro se" motions or make any record regarding the same, to Applicant's detriment; (5) Applicant asked a question that indicated trial counsel believed Applicant committed the offense; and (6) Trial counsel failed to object to mischaracterization of expert testimony in the State's closing argument.

*Id.*, pp. 60-61.

The PCR court denied Tomlinson's application on all grounds. *Id.*, pp. 61-74. Tomlinson appealed, raising issues relating to ineffective assistance of his trial counsel, appellate counsel, and PCR counsel. *See Tomlinson v. State*, 723 N.W.2d 451 (table),

7

2006 WL 2266310, 2006 Iowa App. LEXIS 960 (Iowa Ct. App. 2006) (*Tomlinson II*); Doc. No. 10, ¶ 4(a), Appellant's Brief, *Tomlinson v. Iowa*, No. 05-1221 (Iowa S. Ct. June 6, 2006). The issues Tomlinson raised were summarized by the PCR appellate court as follows:

> Tomlinson contends he showed that his trial counsel, appellate counsel, and postconviction relief counsel provided him ineffective assistance. . . . Tomlinson was tried and convicted of first-degree murder, second-degree murder, and flight from the state to avoid prosecution. His trial counsel filed a motion for change of venue which was denied. Trial counsel also sought a four-week continuance and was granted a one-week continuance. Appellate counsel did not raise either issue on direct appeal. Tomlinson contends his postconviction counsel was ineffective in failing to assert that his appellate counsel was ineffective for failing to raise the issues on direct appeal.

*Tomlinson II*. The PCR appellate court affirmed the denial of PCR relief, finding Tomlinson had failed to show that had his appellate and PCR counsel raised these issues, the result of either the appeal or the PCR proceeding would have been different. *Id*.

Tomlinson filed an application for further review, arguing "[t]he Court of Appeals erred in denying [his] claim of ineffective assistance of counsel." Doc. No. 10(4)(h). More specifically, he argued his "post-conviction relief counsel was ineffective for failing to adequately pursue ineffective assistance of appellate and/or trial counsel for failure to adequately pursue a motion for change of venue and a motion for continuance of trial." *Id*., p. 2. The Iowa Supreme Court denied the application. Doc. No. 10(4)(i).

### *TOMLINSON'S CLAIMS IN THIS CASE*

In the present case, Tomlinson asserts three grounds for relief. *See* Doc. No. 3, ¶ 12. Burt argues all three of the issues Tomlinson has raised in this action are unexhausted because Tomlinson failed to assert the issues in an application for further review to the Iowa Supreme Court. Doc. No. 8-2, pp. 3-4, citing numerous authorities.

8

The Eighth Circuit has explained repeatedly:

> Before a federal court may reach the merits of a claim in a *habeas* petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*per curiam*); *McCall v. Benson*, 114 F.3d 754, 757 (9th Cir. 1997).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998). Providing the State the opportunity to consider and rule upon alleged violations of constitutional rights is a necessary precursor to federal review. *See id.*; 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]"); *Sillick v. Ault*, 358 F. Supp. 2d 738 (N.D. Iowa 2005) ("In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 1734, 144 L. Ed. 2d 1 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts[.]" (Emphasis added)); *see also Dixon v. Dormire*, 263 F.3d 774, 779-90 (8th Cir. 2001) (discretionary review by the Missouri Supreme Court required to avoid procedural default); *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998) (state prisoner must fairly present constitutional claims to state court before seeking federal *habeas* review); *Hood v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998) (citing *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)).

The court must examine the issues raised to determine whether a petitioner "has fairly presented his claims to the state courts." *O'Sullivan*, 526 U.S. at 848, 119 S. Ct. at 1734. Thus, the court must determine whether Tomlinson properly exhausted each of

9

the issues he raises in this action. The court will address Tomlinson's second and third grounds for relief first.

### *Due Process Claim*

As Tomlinson's second ground for relief, he cites "dew process" [sic]. Doc. No. 3, ¶ 12B. In support of his claim, Tomlinson asserts the following:

> The defendant filed prose [sic] motions before trial stating that he wanted his right to be considered innocent until proven guilty. Also he wanted to plea[d] not guilty and that was the only plea he wanted to be argued. Because of these motions the judge should have ordered the police to investigate who bought the shotgun shells[.] [A]lso the police should have investigated who's [sic] fingerprint was found on the 9 volt battery from the fire alarm. They should have also investigated who had the medical alert tag, and where it came from. The judge should have also ordered trial attorneys to argue not guilty like the defendant asked.

Doc. No. 3, p. 9 of 36.

In Tomlinson's *pro se* brief, he argues he "has been deligent [sic] in pro se trying to bring the truth out." Doc. No. 21, p. 14 of 22. The claim, as he explains it in his brief, appears to be that his trial attorneys presenting conflicting theories of the case at trial, arguing Tomlinson was not guilty of the offenses charged but also asserting an insanity defense. Tomlinson apparently disagreed with this trial strategy, and he claims his due process rights were violated because the trial court did not order his attorneys to proceed in a manner consistent with Tomlinson's wishes. *Id.*, pp. 13-14 of 22.

The court finds Tomlinson failed to exhaust this claim in the Iowa courts. Even a generous reading of Tomlinson's claims in the Iowa courts fails to result in the conclusion that Tomlinson fairly presented this issue at any stage of his appellate or post-conviction proceedings. As a result, the Iowa courts never had a full opportunity to pass upon, and potentially correct, the alleged violations of federal constitutional rights Tomlinson raises

10

in this proceeding.  Providing the State with such an opportunity is a necessary precursor to federal review.  *See Frey, supra*; *see also Hood v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998) *(*citing *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)).

Because Tomlinson failed to present the issue in the Iowa courts, the claim is unexhausted.  Furthermore, because the time for Tomlinson to raise new claims in the Iowa courts has passed, the claim is procedurally defaulted.  Accordingly, Burt's motion to dismiss this claim should be granted.

### *Ineffective Assistance of Counsel Claim*

As his third ground for relief, Tomlinson asserts ineffective assistance of his trial attorneys.  Doc. No. 3, ¶ 12C.  Tomlinson explains this claim as follows:

> Trial Attorneys should have never tried to argue two conflicting pleas.  Trial attorneys argued Insanity and not guilty.  The defendant only wanted not guilty argued.
> Trial attorneys should have requested the state to investagate [sic] the [WalMart] surveillance tapes further and found the person who actually bought the shot gun shells.  Also they should have requested the unknown fingerprint to be investagated [sic].  Lastly they should have requested the medical alert tag to be investagated [sic].  Trial attorneys should have analized [sic] the factual evidence before the trial.

Doc. No. 3, p. 10 of 36.

Although Tomlinson arguably raised this claim in the context of his ineffective assistance of counsel allegations in the PCR action, he abandoned the claim by failing to include it in his application for further review following the denial of his PCR appeal.  In

11

the application for further review, Tomlinson only challenged his trial counsel's failure to obtain a change of venue or a continuance of the trial. *See* Doc. No. 10(4)(h).[1]

For the reasons discussed above in connection with Tomlinson's second ground for relief, the court similarly finds this third ground for relief is unexhausted and procedurally defaulted. Accordingly, Burt's motion to dismiss this claim should be granted.

### *Actual Innocence Claim*

As his first ground for relief, Tomlinson asserts "actual innocence." Doc. No. 3, ¶ 12A. In support of this ground for relief, Tomlinson reviews and attempts to refute several pieces of evidence introduced at the trial. *See id.*, p. 7 of 36; Doc. No. 21, pp. 9-12. He claims his attorneys were ineffective in failing to investigate the case fully, which he believes would have established his innocence of the charges. I

In response to Burt's motion to dismiss, Tomlinson claims he asserted his innocence "pro se at every step," and he filed *pro se* motions before trial asserting his innocence. Doc. No. 21, p. 9. He states he raised the issue of his innocence again in his PCR action by arguing "there is no evidence, direct or indirect, that proves that [he] was there at the time of the crime. Having everyday contact with a victim is not evidence of guilt." Doc. No. 21, p. 10, citing *United States v. Vallo*, 238 F.3d 1242 (10th Cir. 2001).

As was the case with Tomlinson's other grounds for relief, even if Tomlinson arguably raised this particular ineffective assistance of counsel claim in his direct appeal or his PCR action, he effectively abandoned the claim by failing to argue it in his applications for further review. Thus, the claim is unexhausted and procedurally

---

[1]Furthermore, Tomlinson raised the ineffective assistance of trial counsel claim in the context of a claim that his PCR attorney was ineffective in failing to raise the claims of trial counsel's errors. *See* Doc. No. 10(4)(h). Because there is no right to counsel in a PCR action, there can be no cognizable claim for ineffective assistance of PCR counsel in a habeas action. *See Burns v. Gammon*, 173 F.3d 1089, 1092 (8th Cir. 1999), *and Cornell v. Nix*, 976 F.2d 376, 381 (8th Cir. 1992) (both citing *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)).

12

defaulted. Tomlinson has not even attempted to argue cause and prejudice to excuse his failure to present the claim adequately in the Iowa courts. As a result, Tomlinson "may obtain review of his constitutional claims only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.' . . . [His] claim of actual innocence is offered only to bring him within this 'narrow class of cases.'" *Schlup v. Delo*, 513 U.S. 298, 314-15, 115 S. Ct. 851, 861, 130 L. Ed. 2d 808 (1995) (citing *McCleskey v. Zant*, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 1469-70, 113 L. Ed. 2d 517 (1991)).

Tomlinson's claim of actual innocence does not, by itself, raise a constitutional claim cognizable in a habeas action. Rather, his claim depends on the validity of his ineffective assistance of counsel claim. Tomlinson's actual innocence claim is procedural rather than substantive, representing "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315, 115 S. Ct. at 861 (citing *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993)).

As was the case in *Schlup*, Tomlinson "accompanies his claim of innocence with an assertion of constitutional error at trial." *Schlup*, 513 U.S. at 316, 115 S. Ct. at 861. The Supreme Court explained the threshold such a claim must pass to warrant consideration of a barred constitutional claim:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id*.

Notably, this standard is a demanding one that permits review only in extraordinary cases. *House v. Bell*, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006). To assert actual innocence as a gateway to defaulted claims, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327, 115 S. Ct. at 867; *accord House*, 126 S. Ct. at 2076-77. This is a stronger showing than is needed to establish prejudice. *Id.* The standard "thus ensures that [a] petitioner's case is truly 'extraordinary,' . . . while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Id.* (citation omitted). Stated another way, for a petitioner to pass through the "actual innocence" gateway and be allowed to argue his defaulted constitutional claims, the petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*

In the present case, Tomlinson has not come forward with new evidence that even approaches this stringent standard. Rather than offering new, convincing evidence of his innocence, Tomlinson simply attempts to explain away numerous pieces of evidence that were offered at trial. Although "the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence," *House*, 126 S. Ct. at 2077, Tomlinson has not satisfied his burden to identify new evidence that demonstrates is it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Indeed, he has not even alleged such evidence exists. As a result, Burt's motion to dismiss this claim should be granted.

14

## *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Burt's motion to dismiss be **granted**, and Tomlinson's petition for writ of habeas corpus be dismissed.

**IT IS SO ORDERED.**

**DATED** this 23rd day of August, 2007.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

15